IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABIODUN M. SODIPO,<br>　　　Plaintiff,<br>　　v.<br>CAYMAS SYSTEMS, INC.,<br>　　　Defendant.　　　　　　／ | No. C 06-05794 CRB<br>**ORDER** |

  Proceeding *pro se*, Abiodun Sodipo ("Plaintiff") has sued his former employer, Caymas Systems, Inc. ("Defendant"), alleging that the company discriminated against him on the basis of race or national origin and then, after he filed a grievance with the Equal Employment Opportunity Commission ("EEOC"), retaliated by firing him. Now pending before the Court is Defendant's motion to dismiss. For the reasons set forth below, the Court hereby DENIES the motion to dismiss.

**BACKGROUND**

  Plaintiff, a native and citizen of Nigeria, intitially came to the United States on a non-immigrant work visa. This H1B visa authorized Plaintiff to work in the United States for six years, so long as he maintained continuous employment. In September of 2004, while the H1B visa was in effect, Plaintiff was hired as a "technical support engineer" by Defendant, a company that manufactures various computer security devices.

On November 29, 2005, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant had discriminated against him on the basis of his race and his national origin. He made the following allegations:

> (1) Defendant discriminated against Plaintiff by providing "more favorable terms" in its sponsorship for permanent residence of one of Plaintiff's colleagues, Thiru Palanisamy, who hails from East India;
>
> (2) Defendant discriminated against Plaintiff by granting Mr. Palanisamy's request to transfer to the company's San Jose office, while denying Plaintiff's request for an identical transfer; and
>
> (3) Defendant discriminated against Plaintiff by limiting his access to the company's computer network, email, and office facilities after he had protested the company's discriminatory conduct and while he was taking a leave under the Family Medical Leave Act, yet providing such access to other employees, including an employee named Tom Porter.

According to Plaintiff, the company fired him while this grievance was pending with the EEOC. He claims that this termination was retaliatory and in direct response to his decision to protest the company's prior discrimination against him.

The EEOC dismissed Plaintiff's grievance on June 19, 2006. The EEOC's standard form of dismissal provided two boilerplate reasons why it had decided to deny Plaintiff's claim. First, it stated: "Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve this charge." This justification for dismissal apparently was related to Plaintiff's failure to file rebuttal papers after being told by an EEOC investigator that he had not submitted evidence sufficient to succeed on his claims for discrimination. Next, the notice of dismissal declared: "Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." The EEOC made no specific findings and did not assess the merits of Plaintiffs' claims in detail.

Plaintiff mailed numerous letters protesting the EEOC's decision and requesting that the case be reopened. According to Plaintiff, he sent letters on June 21, June 22, July 26, July 27, July 28, August 2, and August 11. He also claims to have had conversations with EEOC personnel on July 14 and July 18. In these communications, Plaintiff argued that the

1  EEOC had wrongfully dismissed his case. It is evident from this correspondence that
2  Plaintiff had notified the EEOC that he had been fired from his job. It is also evident from
3  these letters that Plaintiff communicated to the EEOC his belief that Defendant had retaliated
4  against him for filing the EEOC grievance. In reply, the San Francisco District Director of
5  the EEOC wrote a letter denying his requests for reconsideration.

6      Plaintiff then filed this lawsuit. He moved almost immediately for a preliminary
7  injunction, which this Court agreed to hear and Defendant agreed to argue on an expedited
8  basis. That motion was denied, and Plaintiff has appealed that decision to the Ninth Circuit.
9  Defendant then filed a motion to dismiss.

## DISCUSSION

11      Now pending before the Court is Defendant's motion to dismiss. Defendant sets forth
12  three arguments: (1) that the Court lacks jurisdiction because Plaintiff has not exhausted the
13  administrative remedies available to him, (2) that Plaintiff cannot prevail on a claim of
14  employment discrimination or retaliation because he is no longer legally authorized to work
15  in the country, and (3) that the complaint fails to set forth claims of discrimination on which
16  relief can be granted.

### I. Exhaustion

18      A federal court lacks jurisdiction to hear employment discrimination claims unless a
19  plaintiff has exhausted the administrative remedies available to him--that is, unless he has
20  already presented those claims to the Equal Employment Opportunity Commission. See,
21  e.g., B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1099 (9th Cir. 2002). Here, Defendant
22  contends that Plaintiff's complaint must be dismissed because "Plaintiff failed to mention the
23  termination of his employment in his EEOC charge, despite making other amendments to the
24  charge more than two months after the termination." Def. Mem. of P & A in Supp. of Mot.
25  to Dismiss at 12. In other words, Defendant contends that the case must be dismissed
26  because Plaintiff did not raise the fact of his termination or specific allegations of retaliation
27  before the EEOC.

This argument is without merit. While a plaintiff is required to exhaust all claims, the courts construe Plaintiff's claims "'with utmost liberality since they are made by those unschooled in the technicalities of formal pleading.'" Maui Police, 276 F.3d at 1100 (quoting Kaplan v. Int'l Alliance of Theatrical & Stage Employees, 525 F.2d 1354, 1359 (9th Cir. 1975)). Thus, even if an aggrieved employee has failed to assert the precise legal basis of each claim in front of the EEOC, federal courts will nonetheless consider claims exhausted so long as the claims presented in the federal case are "'like or reasonably related to the allegations contained in the EEOC charge.'" Green v. Los Angeles County Superintendent of Schs., 883 F.2d 1472, 1475-76 (9th Cir. 1989) (quoting Brown v. Puget Sound Elec. Apprenticeship & Training Trust, 732 F.2d 726, 729 (9th Cir. 1984)). In examining whether claims have been exhausted, the Ninth Circuit has instructed district courts to consider "such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." Maui Police, 276 F.3d at 1100.

Here, all of these factors support the view that Plaintiff has exhausted his claim for retaliation. First, Plaintiff adequately informed the EEOC of the basis for the alleged discrimination; he clearly communicated to the EEOC his belief that Defendant had taken actions against him on the basis of race and national origin. More importantly, he also communicated to the EEOC, albeit in more informal correspondence, his belief that Defendant had engaged in retaliatory action against him as a result of his decision to file a grievance, as illustrated by Plaintiff's letter of July 18, 2006, to which the EEOC explicitly responded. Second, the perpetrators of the discrimination and the locations where such discrimination took place are the same in the claims presented to the EEOC and all of the claims now presented to the Court; both the discrimination claims and the retaliation claims involve the same actors at the same corporate office.

Perhaps most significantly, the conclusion that Plaintiff has exhausted his claim of retaliation is supported by pleadings previously filed by Plaintiff in which he asserts that he raised the subject of retaliatory termination with the EEOC investigator who was handling

4

his case. In a so-called "Motion for Relief from Order," which the Court subsequently construed as a motion for reconsideration of the Court's previous order denying Plaintiff's motion for a preliminary injunction, Plaintiff wrote:

> The investigator and other officials of the EEOC showed extreme bias against the plaintiff in the handling of the case including seeking to dissuade the plaintiff from making a specific reference to his fear of retaliatory termination when this was conveyed in a meeting on January 25, 2006, instead telling the plaintiff that in the event of termination the commission would look at both quantitative and qualitative values of employee workloads in [order] to evaluate if action is retaliatory.

Similarly, in his filings regarding this motion, Plaintiff states that "plaintiff went to the EEOC on May 30, 2006, expressly to amend the charge to reflect the retaliatory termination of his employment, instead the EEOC officer attached to the case turned abusive towards the plaintiff in an attempt to stop him from doing so." He further alleges that "the investigating officer was later removed from the case for his conduct."

These allegations, if true, establish that Plaintiff exhausted all of his claims before the EEOC, including his claim of retaliatory termination. The Court, of course, makes no findings as to the truth of these allegations; it is enough at this stage of the lawsuit for Plaintiff to state that this is what transpired. The fact that Plaintiff did not present these allegations specifically in an amended grievance is especially irrelevant when, as Plaintiff alleges, the EEOC discouraged him from doing so; what matters is that he put the EEOC on notice of his claim for retaliation and asked the agency to review those allegations. Cf. Love v. Pullman Co., 404 U.S. 522, 527 (1972) ("[T]echnicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process."). Here, Plaintiff asserts that he communicated his concerns to the EEOC, both orally (as to the termination) and in writing (as to his other concerns about retaliatory misconduct). Thus, Plaintiff's claim for retaliation, as pled, must be deemed exhausted. It is immaterial, of course, that the EEOC never specifically addressed this claim. See Maui Police, 276 F.3d at 1099 ("The EEOC's failure to address a claim asserted by the plaintiff in [his] charge has no bearing on whether the plaintiff has exhausted [his] administrative remedies with regard to that claim."). In light of the liberal pleading requirements applicable to *pro se* plaintiffs, and in light of the allegations that Plaintiff actually did present concerns about retaliatory

5

termination to the EEOC, the Court finds that Plaintiff has exhausted all claims presented in this lawsuit.[1]

## II. Suits by Aliens Unauthorized to Work

Defendant next argues that the Court must dismiss the case because Plaintiff is no longer authorized to work in the United States. Specifically, Defendant notes that the government terminated Plaintiff's visa after he was fired by Defendant. Thus, Defendant argues, Plaintiff cannot bring a suit for employment discrimination because he lacks authorization to work.

In support of this argument, Defendant cites and relies on only one case: the Fourth Circuit's decision in Egbuna v. Time-Life Libraries, Inc., 153 F.3d 184 (4th Cir. 1998). In that case, Egbuna, a Nigerian national, had been hired in June of 1989 by a company called TTLI while he was in the United States on a valid work permit. Id. at 185. His visa expired six months later. Id. Some time after that, Egbuna cooperated with another employee in a successful suit against TTLI for sexual harrassment. Id. Egbuna then voluntarily left the company in April of 1993. Id. Two months later, he asked TTLI to employ him again. Id. at 185-86. When the company refused, Egbuna sued, alleging that the company had unlawfully retaliated against him because of his cooperation in the previous sexual harassment lawsuit by his fellow employee. Id. at 186. The Fourth Circuit affirmed the district court's decision, which held that, as an illegal alien who had not been authorized to work in the country for the four years prior to TTLI's allegedly improper conduct, Egbuna could not establish a violation of Title VII because he was not in fact eligible to hold the job that TTLI had denied him. Id. at 188 ("In this instance, to rule Egbuna was entitled to the position he sought and to order

---

[1] While it is true generally that the arguments of counsel are not to be accepted as factual allegations, "[t]he allegations of a pro se complaint, 'however inartfully pleaded,' should be held 'to less stringent standards than formal pleadings drafted by lawyers.'" Jones v. Cmty. Redevelopment Agency of City of Los Angeles, 733 F.2d 646, 649 (9th Cir. 1984) (quoting Hughes v. Rowe, 449 U.S. 5, 9 (1980) (per curiam)). Here, then, the crucial question is whether "'it appears beyond doubt' that [Plaintiff] 'can prove no set of facts in support of his claim which would entitle him to relief.'" Id. at 649 (quoting Hughes, 449 U.S. at 10). Here, the Court cannot conclude that Plaintiff has failed to allege facts that could support the assertion that he has exhausted all of his claims, however inartfully or haphazardly he has alleged them.

6

TTLI to hire an undocumented alien would nullify [the immigration laws], which declare[] it illegal to hire or to continue to employ unauthorized aliens.").

Egbuna is wholly inapposite to this case. Here, Plaintiff was authorized to work in the United States. He was legal when he was hired. He was legal during all of Defendant's allegedly discriminatory conduct. He was legal when he filed his grievance with the EEOC. And he was legal when Defendant allegedly retaliated by firing him. In fact, Plaintiff only lost his authorization to work when, after Defendant notified the authorities that it had fired him, the government revoked his visa. Even if Egbuna were binding on this Court, which it is not, the Fourth Circuit's decision simply would not apply to the case at bar. Unlike the plaintiff in Egbuna, Plaintiff here would have been eligible to hold a job with the company but for Defendant's allegedly improper retaliation. It would be perverse to apply Egbuna to a case where the basis for the revocation of a plaintiff's work permit is the company's own allegedly illegal conduct. Because Defendant cites no other authority for his argument that Plaintiff is an unqualified Title VII plaintiff, the Court rejects that argument.

### III. Failure to State a Claim

Defendant next argues that Plaintiff's claims for discrimination should be dismissed for failure to state a claim on which relief can be granted. This Court disagrees.

The parties have debated extensively whether Plaintiff's complaint sets forth a *prima facie* case of discrimination. The Supreme Court recently made clear, however, that this is the wrong inquiry on a motion to dismiss. As Justice Thomas wrote for a unanimous Court:

> This case presents the question whether a complaint in an employment discrimination case must contain specific facts establishing a prima facie case of discrimination under the framework set forth by this Court in McDonnell Douglas Corp v. Green. We hold that an employment discrimination complaint need not include such facts and instead must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002) (citation omitted); see also id. at 515 ("[W]e hold that an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ."). The Court emphasized that the burden-shifting framework set forth in McConnell Douglas is "an evidentiary standard, not a pleading requirement." Id. at 510. The Supreme Court stressed that the pleading requirement in a discrimination case, as

7

in all civil cases subject to the liberal standard of Rule 8, is not a rigorous one, and indeed, that "'it may appear on the face of the pleadings that a recovery is very remote and unlikely.'" Id. at 515 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). The Court thus instructed that a complaint must be deemed sufficient in a Title VII case when "it gives [the defendant] fair notice of the basis for petitioner's claims"--that is, when the complaint alleges that the employer has subjected an employee to an adverse employment action on the basis of a prohibited consideration such as race, sex, or national origin. Id. at 514.

Here, Plaintiff's complaint satisfies the undemanding pleading requirement of Rule 8. It establishes that Plaintiff, as a black man and a Nigerian national, is a member of a protected class. It further identifies several adverse employment actions to which Defendant allegedly subjected him, including providing less favorable treatment in the processing of immigration paperwork, denying inter-office transfers that allegedly resulted in hardship to Plaintiff, denying access to the company's facilities, and terminating his employment with the company. It also alleges that Defendant took these adverse employment actions on account of Plaintiff's race or national origin, or because of Plaintiff's decision to protest such unlawful discrimination. Plaintiff has therefore made all allegations necessary to survive a motion to dismiss.[2]

The Court has reviewed the various arguments raised in Defendant's motion to dismiss, including whether Plaintiff's immigration paperwork was processed in a manner that actually had an adverse effect on his employment and, more generally, whether Plaintiff has established that he was treated in a less favorable fashion than other similarly situated employees. There may or may not be merit to these arguments. Whatever their merit, a motion to dismiss is not the proper proceeding to evaluate them. Swierkiewicz, 534 U.S. at 508, 515.

---

[2] In holding that Plaintiff's claims of employment discrimination are sufficient to survive a motion to dismiss, the Court notes that it has not relied on any of the facts or arguments set forth in any filings submitted by the Plaintiff subsequent to the filing of his opposition to the motion to dismiss, including his so-called "Synopsis of Hearing Day Arguments" and his "Synopsis of Hearing Day Statements Addendum."

## CONCLUSION

Plaintiff has exhausted all of the claims he has raised in this lawsuit, and Defendant has not advanced any tenable argument that Plaintiff is ineligible to pursue a claim under Title VII. Moreover, Plaintiff has set forth allegations sufficient to meet the pleading requirements of Rule 8, regardless of whether the facts set forth therein suffice to establish a *primia facie* case under the McDonnell Douglas framework. For these reasons, Defendant's motion to dismiss is hereby DENIED.

The Court has received Plaintiff's "Motion to Compel Meet and in Respect of Interrogatory." From this pleading, the Court understands that Defendant has declined to satisfy Plaintiff's discovery requests until the Court has ruled on its motion to dismiss. Now that the Court has ruled on the motion to dismiss, the Court fully expects that both parties will comply with their discovery obligations forthwith. Plaintiff's motion to compel is therefore DENIED as moot.

**IT IS SO ORDERED.**

Dated: December 5, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2006\5794\6 - order re motion to dismiss.wpd          9