IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABIODUN M. SODIPO,<br><br>    Plaintiff,<br><br>  v.<br><br>CAYMAS SYSTEMS, INC.,<br><br>    Defendant.<br>_____ / | No. C 06-05794 CRB<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF** |

In this employment discrimination case, Abiodun Sodipo ("Plaintiff") claims that his former employer, Caymas Systems, Inc. ("Defendant"), discriminated against him on the basis of his race and national origin, and then retaliated against him after he complained of such discrimination. Now pending before the Court is Defendant's motion for summary judgment. For the reasons set forth below, Defendant's motion is hereby GRANTED. For the same reasons, Plaintiff's most recent request for injunctive relief must be DENIED.

### BACKGROUND

Defendant is, or was, a technology company located in Silicon Valley. The nature of its business is described in the record as follows: "The company delivers a highly scalable product family of low-cost, high-performance 'Web Platforms' for the Internet and Intranet data centers of Enterprise and Service Provider customers." Weiseth Decl., Ex. E, at 1. As

//

1   this description of the company suggests, many of its employees are required to have
2   technical or scientific skills. Id.

3        Plaintiff is a black man and a citizen of Nigeria.  He is well-educated and possesses
4   "the equivalent of a Master of Science degree in Electrical Engineering, along with several
5   years of related professional experience in technical support and networking."  Id.  He came
6   to the United States several years ago on H-1B Visa, which permits an alien to work in the
7   United States for a particular employer and for a certain period of time.  See 8 U.S.C. §
8   1101(a)(15)(H)(i)(B).  To obtain an H-1B Visa, an employer must petition the federal
9   government on behalf of an alien whom it has hired.  Initially, in October of 2000, Plaintiff
10  received his H-1B Visa through a petition submitted by an employer called VPNET
11  Technologies.  This petition authorized Plaintiff to work in the country for a period of three
12  years.  Weiseth Decl., Ex. C.  Before this word authorization expired, Plaintiff accepted a
13  new job at a company called AEKO Consulting, which arranged for an extension of
14  Plaintiff's H-1B Visa until August of 2005.  Weiseth Decl., Ex. D.

15       In August of 2004, Plaintiff accepted a new position with Defendant.  The title of his
16  new position was "Technical Support Engineer."  Weiseth Decl., Ex. B, at 1.  Again, because
17  Plaintiff was a foreign national, Defendant was required under federal immigration laws to
18  seek authorization specifically for his employment with a new employer.  Defendant's
19  lawyers petitioned the United States Citizenship and Immigration Services ("USCIS") for an
20  extension of Plaintiff's H-1B Visa in September of 2004.  Weiseth Decl., Ex. E, at 1-2.  In
21  November of 2004, USCIS granted the petition and extended the H-1B Visa to permit
22  Plaintiff to work in the country until September, 30, 2006.

23       Plaintiff claims that he experienced discriminatory treatment during his employment
24  with Defendant.  First, he claims that Defendant provided more favorable treatment to other
25  colleagues in the processing of immigration paperwork.  Second, he claims that Defendant
26  denied him access to his computer when he took a leave of absence from the company for
27  medical reasons.  Third, he claims that Defendant accommodated the request of another
28  similarly situated employee to transfer from one corporate office to another, but denied

2

1  Plaintiff an identical transfer.  Plaintiff argues that all of these were acts of discrimination,
2  done by his employer out of animus toward Plaintiff because of his race and national origin.
3  At the end of November of 2005, Plaintiff filed a grievance with the Equal Employment
4  Opportunity Commission to protest these actions.  Weiseth Decl. Ex. Q; Fine Decl. Ex. A;
5  Fine Decl. Ex. B.  The EEOC eventually dismissed Plaintiff's grievance.  The agency first
6  concluded that Plaintiff had "failed to provide information, failed to appear or be available
7  for interview/conferences, or otherwise failed to cooperate to the extent that it was not
8  possible to resolve [his] charge."  Fine Decl., Ex. C, at 1.  The agency also concluded that the
9  evidence presented in the administrative proceeding was insufficient to "establish[]
10  violations of the statutes."  Id.

11  In February of 2006, while Plaintiff's administrative complaint was pending,
12  Defendant fired him.  On the same day, Defendant also fired eight other employees as part of
13  a company-wide "expense reduction plan."  See Weiseth Decl., Ex. S, at 1-3.  According to
14  minutes from a contemporaneous meeting by the company's Board of Directors, the
15  company reduced its workforce to sixty full-time employees, reduced the CEO's salary by
16  half, terminated some of its research and development contracts, and eliminated other costs
17  related to public relations, finance, technology, and overhead from office leases.  Id. at 3.
18  After terminating Plaintiff, the company notified USCIS that it wished "to withdraw the H-
19  1B petition approved on his behalf."  Weiseth Decl., Ex. T, at 1.  USCIS revoked Petitioner's
20  H-1B Visa shortly thereafter.  Weiseth Decl., Ex. U.

21  In this lawsuit, Plaintiff renews his claims for discrimination and retaliation.  Plaintiff
22  filed his complaint on September 25, 2006.  Five days later, on September 29, 2006, one day
23  before his H1-B Visa was originally scheduled to expire, Plaintiff filed a motion for a
24  preliminary injunction.  He requested "injunctive relief immediately reinstating [him] to his
25  lawful work relationship with the defendant until the litigation of the case is completed as
26  well as requiring the defendant to file all . . . immigration petitions necessary for the plaintiff
27  to lawfully remain in the United States."  Pl.'s Mot. for Prelim. Inj. at 1.
28  //

The Court agreed to hear Plaintiff's motion on an expedited schedule. At the hearing, the Court expressed doubt about "whether it even had authority to provide the relief that Plaintiff [was seeking]," and questioned whether reinstatement was an appropriate remedy "given the immigration regulations applicable to Plaintiff as a foreign worker and the parties' dispute about whether Plaintiff currently has authorization to work in this country." Sodipo v. Caymas Sys., Inc., No. C-06-5794-CRB, 2006 WL 2850056, at 2 (N.D. Cal. Oct. 5, 2006). Regardless of the relief available, however, the Court denied the motion for an injunction, holding that Plaintiff had "not established that there [were] 'serious questions' raised by his complaint sufficient to outweigh any hardships that [might] tip in his favor" and had not demonstrated a probability of "'success on the merits.'" Id. at 2-3 (citing Ninth Circuit cases on the standard for a preliminary injunction).

The Ninth Circuit affirmed the Court's denial of injunctive relief. Sodipo v. Caymas Sys., Inc., 208 Fed.Appx. 524, 2006 WL 3421276 (9th Cir. 2006). The Supreme Court denied certiorari. Sodipo v. Caymas Sys., Inc., 127 S. Ct. 2061 (2007). Now pending before the Court is Defendant's motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A principal purpose of the summary judgment procedure "is to isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

//

In ruling on a motion for summary judgment in the context of a discrimination claim under Title VII, this Court uses the analytical framework established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Under that burden-shifting framework, a plaintiff bears the initial burden of establishing a *prima facie* case of discrimination, meaning that he must show (1) that he is a member of a protected class, (2) that he performed his work adequately, (3) that he suffered an adverse employment action, and (4) that some other circumstance indicates a discriminatory motive, such as the more favorable treatment of similarly qualified individuals. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-03 (1973); <u>see also</u> <u>Leong v. Potter</u>, 347 F.3d 1117, 1124 (9th Cir. 2003); <u>Kortan v. Cal. Youth Auth.</u>, 217 F.3d 1104, 1113 (9th Cir. 2000); <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1220 (9th Cir. 1998). Once the plaintiff meets this initial burden, the defendant must come forward with a legitimate, nondiscriminatory reason for its actions. <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Leong</u>, 347 F.3d at 1124; <u>Godwin</u>, 150 F.3d at 1220. If the defendant articulates a legitimate justification for its treatment of the plaintiff, the burden then shifts back to the plaintiff to come forward with evidence to demonstrate that the defendant's putative justification is merely a pretext for discrimination. <u>McDonnell Douglas</u>, 411 U.S. at 804; <u>Leong</u>, 347 F.3d at 1124; <u>Godwin</u>, 150 F.3d at 1220.

The same "order and allocation of proof . . . also governs actions for retaliatory discharge." <u>Miller v. Fairchild Indus., Inc.</u>, 797 F.2d 727, 730 (9th Cir. 1986). The Ninth Circuit has described the burden-shifting framework in the context of retaliation claims as follows:

> To establish a prima facie case of discriminatory retaliation, a plaintiff must show that: (1) [he] engaged in an activity protected under Title VII; (2) [his] employer subjected [him] to adverse employment action; (3) there was a causal link between the protected activity and the employer's action. Causation sufficient to establish a *prima facie* case of unlawful retaliation may be inferred from the proximity in time between the protected action and the allegedly retaliatory discharge. Alternatively, the plaintiff can prove causation by providing direct evidence of retaliatory motivation.
>
> Once a plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory explanation for the action. To satisfy this burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus.

5

> If the employer successfully rebuts the inference of retaliation that arises from establishment of a *prima facie* case, then the burden shifts once again to the plaintiff to show that the defendant's proffered explanation is merely a pretext for discrimination.

Id. at 731 (citations and internal quotation marks omitted).

For claims of discrimination, as well as claims of retaliation, the burden-shifting framework disappears once a plaintiff demonstrates pretext, and then the only remaining issue is "discrimination *vel non*." See Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 659 (9th Cir. 2002) (citations omitted). Although the burden of production shifts, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Texas Dep't of Commty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

## DISCUSSION

As discussed above, Plaintiff's claims rest on four discrete incidents during which he claims to have been the victim of discrimination or retaliation. First, he claims that Defendant provided more favorable treatment to another employee in processing petitions for foreign workers' H-1B Visas. Second, he claims that Defendant wrongfully denied him access to his laptop computer when he took a leave of absence for medical reasons. Third, he claims that Defendant granted a request from a similarly situated worker to transfer from its office in Petaluma to its office in San Jose, but denied Plaintiff's identical request. Fourth, he claims that Defendant fired him in retaliation for filing a discrimination complaint with the EEOC. The Court concludes that none of Plaintiff's claims can survive Defendant's motion for summary judgment.

### I. Visas & Labor Certification

At the time of Plaintiff's employment, Defendant's work force included nationals of several foreign countries. See Weiseth Decl. A (showing that Defendant employed workers from Greece, China, India, Canada, and Nigeria). In connection with their employment of foreign workers, Defendant used a law firm to obtain visas and submit "alien employment certifications."

6

Plaintiff claims that Defendant treated another employee, Thiru Palanisamy, more favorably than it treated him in obtaining a labor certification. Specifically, Plaintiff contends that Defendant filed documents that "would facilitate faster processing" for Palanisamy than it did for him. Compl. at 2. His theory is that his application for a labor certification was filed using the slower, "traditional" method, but that Palanisamy's application for labor certification was filed using the faster, "reduction in recruitment (RIR)" method.

Even assuming that Plaintiff and Palanisamy are similarly situated for purposes of their immigration paperwork, the evidence still precludes Plaintiff from establishing a *prima facie* case with respect to the labor certification. The evidence demonstrates that Plaintiff and Palanisamy were treated by Defendant *exactly the same way*. Defendant's law firm filed applications for labor certifications on behalf of both men using the "traditional" method. Weiseth Decl. Ex. A. Compare Weiseth Decl. Ex. G (Plaintiff's application), with Weiseth Decl. Ex. H (Palanisamy application). Because Plaintiff has submitted no evidence to show that he has been subjected to less favorable treatment, much less to unfavorable treatment for discriminatory reasons, Defendant's motion for summary judgment must be GRANTED as to the question of labor certification.[1]

---

[1] Plaintiff's perception of differential treatment apparently is due to the fact that, in certain paperwork relating to applications for permanent residence, there was an indication that Plaintiff's and Palanisamy's paperwork would be processed using the faster RIR method. See Weiseth Decl. Ex. K. Plaintiff expressed concern to the human resources department about the fact that his labor certification would be processed using the slower method. He was especially concerned because his H1-B Visa was at an advanced "stage" and the delay in processing would hamper his ability to obtain permanent residence. He expressed a "feeling of betrayal" that the company had "treated [him] in such an underhand and discriminatory fashion." Weiseth Decl. Ex. J. The human resources department, after consulting its immigration experts, responded that all of the employees had been processed "under the traditional method" because Caymas had not conducted sufficient recruitment for their positions to use the RIR method. Weiseth Decl. Ex. K; see also 20 C.F.R. § 656.21 (permitting faster processing of a labor certificate for foreign workers where the employer has conducted open recruitment for the position for six months).

Plaintiff does not dispute the evidence indicating that the processing of his and Palanisamy's applications for labor certification was identical. Instead, he now suggests Defendant subsequently filed a "labor certificate substitution" giving Palanisamy more favorable treatment. Pl's Opp. Br. to Def.'s Mot. for Summ. J. at 1, 8. In connection with the motion for summary judgment, however, he has presented no admissible evidence to show that such a substitution took place, and Defendant has insisted that it did not. See Fine Decl., Ex. G, at 6.

## II. Access to Facilities

On October 7, 2005, Plaintiff went to the emergency room to seek treatment for stress-related illness. Thereafter, he requested and was granted permission to take time off until he could visit a doctor. Memar Decl. Ex. E. More than a week later, he visited a doctor "for stress related to work circumstances and exhaustion." Weiseth Decl., Ex. N, at 2. Due to his poor health, Plaintiff took a leave of absence from his job for more than six weeks, between October 18, 2005, and November 30, 2006. Weiseth Decl., Ex. N, at 3. During this time, Defendant denied him access to work-related files on his laptop computer and refused to allow him into the office. Plaintiff claims that the denial of access was discriminatory and done in retaliation for his prior complaints, discussed above about Defendant's putatively discriminatory treatment vis-à-vis the application for labor certification.

The Court concludes that Plaintiff again has failed to establish a *prima facie* case on his theory of discrimination, Plaintiff has presented no evidence that similarly situated employees, *i.e.* employees given a medical leave of absence due to work-related stress, were given access to the office or to work-related files on their laptop. (Plaintiff's managers assert, and Plaintiff does not deny, that he was given access to his personal files and permitted to take them home with him. See Memar Decl. ¶ 11; Weiseth Decl. ¶ 18.) Indeed, Plaintiff stated in his deposition that he was unaware of any other employees who had taken leaves of absence due to work-related stress. Fine Decl., Ex. E, at 133. Because Plaintiff has failed to present evidence of any disparate or unfavorable treatment as to similarly situated individuals, he has failed to establish a *prima facie* case of discrimination.

As to Plaintiff's theory of retaliation, the Court also concludes that Plaintiff's claim cannot survive summary judgment. In support of this theory, Plaintiff notes that he had previously complained about his perception of unfavorable treatment in the processing of his immigration paperwork and had threatened to take his complaint of "adverse treatment" to "appropriate government authorities." Weiseth Decl. Ex. M. (As noted above, the evidence presented to the Court compels the conclusion there actually was no adverse or differential treatment.) Plaintiff argues that his superiors banished him from the office and barred his

8

1 access to his computer in retaliation for his previous complaints about the immigration
2 paperwork.

3     Plaintiff's theory fails as a matter of law for two reasons. First, he suffered no
4 "adverse employment action." Here, an employee took a six-week leave of absence because
5 work-related stress had detrimentally affected his health. Under such circumstances, it is not
6 an "adverse employment action" for an employer to keep the employee from continuing to
7 work. Plaintiff has not claimed that he suffered a deduction in pay, that he suffered a
8 demotion, or that he was prevented from completing his work upon his return to the
9 company. In short, Plaintiff has presented no allegations, and has submitted no evidence, to
10 suggest that the denial of access to Defendant's facilities detrimentally affected the
11 conditions of his job. Nor, under the circumstances of the case, could a reasonable jury
12 conclude that Defendant's decision to keep Plaintiff from working was " reasonably likely to
13 deter [him] from complaining about discrimination in the workplace" when Plaintiff himself
14 had asked to stop working for six weeks. Ray v. Henderson, 217 F.3d 1234, (9th Cir. 2000)
15 (reviewing cases and describing the Ninth Circuit's broad standard for establishing an
16 "adverse employment action").

17     Second, even if the Court were to assume that Plaintiff had established a *prima facie*
18 case of retaliation, Plaintiff has failed to present evidence sufficient to rebut the legitimate,
19 non-discriminatory justifications asserted by Defendant for its actions. Plaintiff's supervisor
20 states that she denied Plaintiff access to his computer because "he needed to focus on his
21 health and not worry about work during his medical leave." Memar Decl. ¶ 11. The
22 supervisor denied "access to the company's laptop computer during his medical leave,"
23 permitted Plaintiff to "remove personal files from the laptop," and "reassured [Plaintiff] that
24 the company would provide him with the time he needed to catch [up] upon his return from
25 leave." Id. The manager of human resources did the same thing. Accord Weiseth Decl. ¶
26 19. Plaintiff has offered no direct evidence to suggest any retaliatory purpose behind his
27 supervisors' actions. Nor, given the fact that he suffered no identifiable harm from the denial
28 of access during his leave of absence, could a reasonable jury conclude that there was one,

9

1 based merely upon the timing of the incident in connection with his previous complaints
2 about the immigration paperwork. In this regard, Plaintiff's mere suggestion of retaliatory
3 conduct is insufficient to create a "genuine" issue of material fact as to the causal link
4 between his prior complaints and the denial of access to his work-related materials. Vasquez
5 v. County of Los Angeles, 349 F.3d 634, 646-47 (9th Cir. 2003). Accordingly, Defendant's
6 motion for summary judgment is GRANTED as to the "retaliatory" denial of access.[2]

### III. Transfer Request

In "early 2005" Plaintiff requested to transfer from his office in Petaluma, California, to an office in San Jose, California. Fine Decl., Ex. E, at 78-79. At the time, a number of people in the company's "development" department were relocating, and Plaintiff expressed his desire to relocate, too. Id. His request was denied. According to Plaintiff, at the time he made this first request, "there was no plan for people in support [such as Plaintiff] to go to San Jose." Fine Decl., Ex. F, at 205-06. Thus, technical support engineers such as Plaintiff were all kept in Petaluma.

Sometime in the middle of 2005, Plaintiff's colleague Thiru Palanisamy, also a technical support engineer, requested and received a transfer to the San Jose office. Memar Decl. ¶ 5 (indicating that Palanisamy was transferred in mid-April); Fine Decl., Ex. E, at 80 (indicating that Palanisamy was transferred in May or June). According to the department supervisor who granted the transfer, Palanisamy's request was approved "because there was cubicle work space available for a Customer Service Department employee at that time." Memar Decl. ¶ 5.

---

[2] In his opposition to the motion for summary judgment, Plaintiff asserts that "the defendant clearly link[ed] the retaliatory action to the protected activity by the plaintiff." Pl's Opp. Br. to Def.'s Mot. for Summ. J. at 7. He claims that his supervisor "had also stated that the denial by the defendant of access to the company facilities and laptop while the plaintiff was on FMLA Leave was in part due to the fact that the plaintiff had engaged in protected activity." Id. The record, however, contains no evidence to support Plaintiff's allegation. Plaintiff refers to an e-mail in which he purportedly communicated to the company's CEO and his supervisor that he had been explicitly told that he was denied access to Defendant's facilities out of retaliation for his complaints of discrimination. Id. Plaintiff has not produced a copy of this e-mail in connection with the motion for summary judgment. Moreover, even if he had produced such an e-mail, it would be insufficient to defeat summary judgment. Simply put, Plaintiff has presented no admissible evidence from which a jury might be able to conclude that Plaintiff had met his burden to rebut Defendant's legitimate explanation for its conduct.

10

Plaintiff renewed his request for a transfer after learning of Palanisamy's transfer, again in August of 2005, again in October of 2005 after he became ill. Memar Decl. ¶ 5; Fine Decl., Ex E, at 80-81. As to this last request, Plaintiff had supported his request for a transfer with a recommendation from his doctor that his health would benefit from working in San Jose where he had family and friends. Weiseth Decl., Ex. N, at 2. All of Plaintiff's requests to transfer were denied. According to his supervisor, these requests initially were denied, in the summer of 2005, because "cubicle space was unavailable" and because "when [Plaintiff] made his request, the only open space in the San Jose office was reserved for a position in the engineering department that the company was actively seeking to fill." Memar Decl. ¶ 5. As to Plaintiff's request for a transfer due to his medical illness, the company "agreed to consider [Plaintiff's] request when he returned to work from his medical leave should space become available." Weiseth Decl. ¶ 17. According to the human resources department, Plaintiff refused to meet with investigators when he returned to work because, by that point, he had already filed a complaint against Defendant and he "preferred to take his complaints to the EEOC." Weiseth Decl. ¶¶ 22, 24.

Plaintiff does not dispute that he refused to meet with a mediator after returning from his medical leave, though he asserts that "the proposed mediation process overseen by a party paid for by the defendant would not [have been] a fair exercise." Pl's Opp. Br. to Def.'s Mot. for Summ. J. at 6. He also does not provide any evidence to rebut the legitimate, non-discriminatory explanation for Defendant's refusal to transfer him. To the contrary, Plaintiff acknowledges that he has no basis for disputing it. See Fine Decl., Ex. E, at 210-11 ("Q. Did [your supervisor] explain what those constraints were? A. That there was not a cubicle available that I would be able to move to. Q. Do you have any reason to disbelieve what Mr. Memar told you about the unavailability of a cubicle for you? A. At that point in time, I hadn't been to [the] San Jose office, so I could not tell one way or the other, no, but they did not give an indication of why Thiru could go and I couldn't.").

On this record, the Court concludes that Defendant is entitled to summary judgment on Plaintiff's claim for discrimination and retaliation vis-à-vis the denial of a transfer to San

1  Jose.  Plaintiff was hired to work at a position in the Petaluma office.  Weiseth Decl., Ex. B,
2  at 1.  The company considered his requests for a transfer and decided that, given its
3  resources, "[c]urrently the business and the job requirement [was] for [his] position to be in
4  Petaluma."  Memar Decl., Ex. F, at 1.  At the time of his renewed request, Plaintiff seemingly
5  expressed appreciation for the courtesy extended to him by his supervisors.  See also id. at 1
6  ("Thanks for your response and the subsequent explanation . . . that you would need some
7  time to be in a position to make a case for my working out of San Jose as well as expressing
8  an understanding that the move to San Jose would be beneficial to my health.").  On the
9  record described above, the Court concludes that Plaintiff has presented inadequate evidence
10 for a reasonable jury to decide that the company's legitimate reasons for denying his transfer
11 were pretextual, rather than non-discriminatory and legitimate.  Vasquez, 349 F.3d at 646-47.

### IV.  Termination

Defendant is a company in dire financial straits.  In February of 2006, the company's Board of Directors convened and agreed to an "expense reduction plan . . . , including the headcount reduction described therein."  Weiseth Decl., Ex. S, at 1.  The plan included the termination of eight full-time employees; the termination of six research contractors; the reduction of three positions from full-time to part-time; the reformation of certain departments such as information technology and finance; a restructuring of the company's debt; a restructuring of the company's leases; a reduction in the CEO's salary by fifty percent; and the elimination of certain public relations expenditures.  Id. at 3.  By the end of the "expense reduction plan," the company consisted of only sixty full-time employees.

Plaintiff was one of the nine employees ultimately terminated as a result of this plan. Weiseth Decl. ¶ 24.  He was chosen to be fired following an evaluation process that examined every employee's "merit," "versaility," "seniority," and "salary."  Weiseth Decl., Ex. R, at 1.  The evidence indicates that Plaintiff received the lowest score for "merit" and "versatility" in his department, as well as the lowest overall score.  Id.  According to Defendant, because the company's CEO had ordered one person to be fired from the

//

customer service department as part of the reduction in force, this evaluation formed the basis for Defendant's legitimate decision to fire him. Id.; see also Weiseth Decl. ¶ 24.[3]

In response to this legitimate, non-discriminatory explanation for Defendant's conduct, Plaintiff has presented no evidence of retaliation, apart from the mere fact that he submitted a grievance to the EEOC several months prior to his termination. The Court finds such evidence insufficient, as a matter of law, for the case to go to a jury. Accordingly, Defendant's motion for summary judgment is hereby GRANTED as to Plaintiff's motion for retaliation as well.

//
//
//
//

---

[3] Since the initial reduction in force in February of 2006, things only got worse for Defendant. According to the company's director of human resources, in February of 2007 "Caymas notified all employees that they were being laid off effective immediately." Weiseth Decl. ¶ 29. The company gave its employees four hours "to gather their personal items" and "closed its Petaluma and San Jose office." Id. Thereafter, Defendant "transferred all of its assets to a financial institution so that it can effect a plan of liquidation in the near future." Id.

The fact that Defendant is no longer operating its business prompted Plaintiff to seek immediate injunctive relief to keep the company from transferring its assets or shutting its doors. He filed a "emergency request for [a] restraining order on defendant to prevent the dissolution of the company or the transfer of [its] assets in a manner that would undermine injunctive relief sought by [him]." Sodipo v. Caymas Sys., Inc., No. C-06-5734, at 3 (N.D. Cal. Apr. 30, 2007). The Court denied his request, noting that there was "no legal authority to support the extraordinary proposition that an aggrieved former employee may singlehandedly suspend a company's decision to wind up its affairs on the ground that such dissolution might preclude the former employee from returning to work at the company." Id. at 4.

Plaintiff has repeatedly suggested that Defendant has erected a smokescreen in front of the Court and is not really suffering financial hardship. In support of this proposition, he points to a recent news article which, after quoting the company's "senior director of marketing" about why the company's website and phones stopped working around the time of its restructuring, suggests in a headline that the company was "alive and kicking." See Pl's Opp. Br. to Def.'s Mot. for Summ. J. at 12 (quoting Kevin McLaughlin, Caymas Says Its Still Alive and Kicking, Mar. 29, 2007, available at http://www.crn.com/security/198701204). The Court finds that such hearsay evidence from a publicist insufficient to raise even the slightest doubt about the fact that Defendant is now defunct, especially given the overwhelming evidence previously submitted to the Court regarding the fact that it is winding up its affairs and looking for buyers. See Fine Decl. in Supp. of Def.'s Appearance at Case Management Conference, Docket No. 168, at 1-4 & Exs. A, B. & C (indicating that Defendant has made a general assignment of all of its assets and that a third party is now maintaining those assets either "to sell such Assets as a going concern or to sell such Assets in liquidation [in order to] wind down Caymas").

## CONCLUSION

Plaintiff has failed to produce sufficient evidence to give rise to a triable issue of fact with respect to his claims for discrimination and retaliation against his former employer. For this reason, Defendant's motion for summary judgment is GRANTED. The Court expresses no view on the relief that would have been available to him if he had been able to prevail upon his claims. Because he cannot, Plaintiff's recently filed motion for the Court to compel Defendant to reinstate his labor certification application is DENIED.

**IT IS SO ORDERED.**

Dated: August 23, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE